R. E. HARRILL v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 12 May, 1920.)

**Carriers of Goods—Connecting Lines of Carriage—Misrouting—Delays—Negligence—Conversion—Acceptance of Goods—Damages.**

> Where an initial carrier has accepted a shipment for a designated routing to the shipper's address, and by reason thereof the shipper did not find them at the designated terminal or otherwise within several months, and then orders them returned to the initial point of shipment where he afterwards accepted them, this acceptance, however long or inexcusable the carrier's delay, precludes the idea of a conversion by the carrier, and its responsibility for the full value of the goods, and the shipper may only recover damages caused by the misrouting, including those caused by the reshipment, and the damages to the goods by the defendant's wrongful conduct.

CIVIL ACTION, tried before *Shaw, J.,* at December Term, 1919, of GASTON, upon the following issue:

"What amount of damage, if any, is the plaintiff entitled to recover of the defendant? Answer: '$1,900.' "

The court in its discretion reduced the amount to $1,000. Defendant appealed.

*S. J. Durham for plaintiff.*
*Walter H. Neal for defendant.*

BROWN, J. The plaintiff, a printer of Boiling Springs, N. C., shipped by the defendant a printing outfit of type, press, etc., to New York City. He ordered the routing over the Seaboard and other carriers with the Pennsylvania Railroad as the last carrier to New York City. The plaintiff went to New York, applied to the Pennsylvania Railroad for his property, but it could not be found. It turned out that it had been shipped over another route in which the Pennsylvania was not the last carrier. The goods were found about four months after the shipment. About two months after the shipment plaintiff filed his claim with the defendant for damages. The plaintiff returned to North Carolina at Gastonia on 24 April, 1917, and directed the defendant to return the freight to Gastonia by a certain route, which was done. The defendant obeyed these instructions. This is shown by a letter which the plaintiff offered in evidence.

Some of the goods reached Gastonia on return trip and were found in the freight depot of Southern Railway, and thereupon due notice was given to the plaintiff of the arrival of the goods.

The plaintiff said that only a part of these goods arrived, and the value of what did arrive was only about one-third of original value of $333.33.

The goods were sent from Gastonia by the Southern over to Charlotte for the "Old Hoss" sale to cover freight and storage charges.

These facts are taken from the brief of the counsel for the defendant, and in plaintiff's brief are admitted to be correct.

The court charged the jury as follows: "Now if you find he filed his claim in writing, gentlemen, with the Seaboard Railway Company in the city of New York, as contended by him, and that he had an agreement with the defendant that it should be routed, as alleged in the complaint, over the Seaboard and Pennsylvania roads, and, also, if you further find from the greater weight of the testimony, from the greater weight of the evidence, that the defendant breached that contract, diverted and shipped it over another line, the court instructs you that the plaintiff would be entitled to recover the reasonable market value of the property here."

In this charge we think there was error.

It is true that the evidence shows that the goods of the plaintiff were shipped to New York City by route other than that designated by the plaintiff. Thinking that these instructions had been obeyed, he applied at the Pennsylvania office for his goods. In consequence of having been misrouted they were in the possession of another terminal carrier in the city of New York.

Nevertheless the goods were found after about four months, and after the plaintiff had filed his claim for damages. The plaintiff did not refuse to receive the goods, but directed that the defendant ship them to his order at Gastonia, N. C., over a route specified by the plaintiff.

It is claimed that in consequence of the delay in shipping the goods to New York, caused by the misrouting, the defendant is guilty of a conversion of the goods, and may be held for their full value. Upon this subject it is said in Hutchinson on Carriers (3 ed.), sec. 1372: "Delay on the part of the carrier does not constitute a conversion of the goods, no matter how long continued, so as to make him liable for their value; and so long as the goods remain in specie, however much they may be depreciated in value, the consignee or owner must receive them when tendered, and can recover from the carrier only the damages which he has sustained by the delay. And a voluntary acceptance of the goods, when there has been an inexcusable delay on the part of the carrier in their delivery, will not preclude the owner from a recover of whatever damages he may have sustained thereby." The text is supported by the citation of a large number of decided cases. In *Wells-Fargo Co. v. Hanson,* 91 S. W. Rep., sec. 321, it is said: "If the carrier, on demand, refuses to deliver a trunk within a reasonable time because it is lost, but it is later found and tendered to the plaintiff, the carrier is not guilty of a conversion."

The case at bar, however, precludes all idea of a conversion, because when the goods were found in New York he received them from the defendant, and directed that they be reshipped to Gastonia, N. C., by route designated by the plaintiff.

Under these circumstances we do not think that the defendant, the Seaboard Air Line, is liable for a conversion of the goods because they were shipped to New York by another route other than that designated by the plaintiff. The defendant is only liable for damages growing out of the delay caused by such misrouting as well as any damages which the goods may have sustained by reason of the shipment to New York, and such damages as he sustained by reason of the reshipment to Gastonia and Charlotte due to the wrongful conduct of defendant.

New trial.