R. E. HARRILL v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 4 May, 1921.)

1. Carriers of Goods—Negligence—Misrouting—Damages—Notice—Bills of Lading—Railroads.

Upon the principle relating to the carrier's negligence announced in the former appeal in this case (179 N. C., 540), evidence of the rental value of the printer's outfit and other parts connected with it was competent upon the measure of the consignor's damages under the notice given to the initial carrier of its intended use, though not set out in the bill of lading or written contract of carriage, and which resulted from the wrongful misrouting and reshipment by the carrier.

2. Same—Refusal of Possession—Reshipment.

Where a reshipment of goods is made necessary by the carrier's error in routing it, the carrier may not wrongfully impose a condition to its delivery upon the shipper, and avoid the payment of further damages caused by its making the reshipment itself.

APPEAL by defendant from *Bryson, J.,* at September Term, 1920, of GASTON.

*S. J. Durham for plaintiff.*
*Walter H. Neal for defendant.*

WALKER, J. This case was before us at a former term, and is reported in 179 N. C., 540. In that appeal we held that the negligent misrouting of the goods by the defendant carrier, and the consequent long delay in finding them in New York, did not constitute a conversion of the goods so as to allow the plaintiff to recover for the full value of them, and that the defendant is only liable for damages growing out of the delay caused by such misrouting as well as any damages which the goods may have sustained by reason of the shipment to New York, and such damages as he sustained by reason of the reshipment to Gastonia and Charlotte, due to the wrongful conduct of defendant. After a careful examination of the record in this appeal, we are of the opinion that the presiding judge has tried the case in, at least, substantial accordance with the directions of this Court in the other appeal. Without entering into details, we may safely say, in a general way, that

there was evidence to support the instructions of the court, and they were not more unfavorable to the defendant than was warranted by the facts of the case, as disclosed at the last trial.

The defendant was fully notified, if the evidence is to be accepted as true, as to what plaintiff intended to do with the goods when they arrived in New York. This communication was sufficient to put the defendant on notice as to the resultant damages should it fail or delay in the delivery of the goods. The recent case of *Pendergraph v. Express Co.,* 178 N. C., 344, is directly in point. See, also, *Thompson v. Express Co.,* 180 N. C., 42; *Neal v. Hardware Co.,* 122 N. C., 104; *Peanut Co. v. R. R.,* 155 N. C., 148, and other cases cited in *Thompson v. Express Co., supra.* "When the goods are to be used for a special purpose, or for present use in a given way, and these facts are known to the carrier, he is responsible for the damages fairly attributable to the delay and in reference to the purpose or the use indicated. And it is not necessary always that those facts should be mentioned in the negotiations or in express terms made a part of the contract, but when they are known to the carrier under such circumstances, or they are of such character that the parties may be fairly supposed to have them in contemplation in making the contract, such special facts become relevant in determining the question of damages." Moore on Carries, p. 425; Hutchinson on Carriers, sec. 1367; *Thompson v. Express Co., supra.* There does not seem to be any controversy as to the correctness of this principle or resistance to its application here. The judge explained it fully to the jury. Evidence of the rental value of the printing press, and other parts connected with it, was competent, and properly submitted to the jury. There could be no confusion or misunderstanding as to how it should be used, and there was no danger of charging defendant with double or excessive damages so far as this feature of the case is concerned.

When the goods were ordered to be reshipped to the defendant, the Piedmont and Northern Railway was designated as the final carrier, but the goods somehow fell into the hands of the Southern Railway Company. A sort of fatality somehow attended this shipment, going and returning. As the defendant had the bill of lading issued on the return shipment to itself, and would not surrender it to the plaintiff, so that he could demand and receive his goods at Gastonia, unless he submitted to conditions it had no right to impose, there is no just ground of complaint that he did not get the goods when they arrived at their destination, nor can defendant reasonably object that plaintiff was allowed damages because of the conduct of the defendant in withholding the bill of lading, and thereby depriving plaintiff of the possession and use of the goods. We think that the charge of the court suffi-

ciently covered the case, and that the judge substantially gave every instruction to the jury which was applicable to the facts and to which the defendant was entitled, and we need not discuss the prayers requested by it and which the defendant alleges were refused by the court. The judge could not well have given more of them than he did without impairing the legal·rights of the plaintiff.

The verdict may appear to be a very full one, but the learned and just judge who presided at the trial, we have no doubt, properly guarded the defendant's rights in every way, and we are absolutely sure that he did not abuse the discretion to set aside the verdict which resides in him and the exercise of which, in such circumstances, is not reviewable here.

After careful investigation of the case, especially with reference to the errors assigned, we have reached the conclusion that it was correctly tried by the court.